1

**TYCKO & ZAVAREEI LLP**
2  Kristen L. Sagafi (State Bar No. 222249)
Annick M. Persinger (State Bar No. 272996)
3  483 Ninth St., Suite 200
Oakland, CA 94607
4  Telephone: (510) 254-6810
Facsimile: (510) 210-0571
5  E-Mail:  ksagafi@tzlegal.com
         apersinger@tzlegal.com
6

7  **TYCKO & ZAVAREEI LLP**
Jonathan K. Tycko
8  Lorenzo B. Cellini
1828 L Street, N.W., Suite 1000
9  Washington, D.C. 20036
Telephone: (202) 973-0900
10  Facsimile: (202) 973-0950
E-Mail: jtycko@tzlegal.com
11         lcellini@tzlegal.com

12

13  *Counsel for Plaintiffs*

14

15

16  **UNITED STATES DISTRICT COURT**

17  **SOUTHERN DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| 19  MARGARETTE SMITH on Behalf of Herself and all Others Similarly Situated, | Case No. 3:16-cv-02519-GPC-BLM |
| 20 | |
| 21                              Plaintiff, | **DECLARATION OF SUCCESSOR IN INTEREST ZARAH KIMBLE** |
| 22          v. | **PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 377.32** |
| 23  SPECIALIZED LOAN SERVICING, LLC, | |
| 24 | Date: |
| 25                              Defendant. | Time:  1:30 p.m. Courtroom: 2D |
| 26 | |
| 27 | Hon. Gonzalo P. Curiel |

28

DECLARATION OF ZARAH KIMBLE                                                    1

I, Zarah Kimble, declare as follows:

1.    I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.    My grandmother, Margarette Smith, passed away on April 18, 2017, and we held services for her on April 28, 2017 in San Diego at Holy Cross Catholic Cemetery.  [Cal. Code Civ. P. 377.32(a)(1)-(2)].

3.    My grandmother's home at 2452 Blackton Drive, San Diego CA 92105 is part of an irrevocable trust that that my two sisters and I are the only beneficiaries to per my grandmother's last will and testament filed with the San Diego recorder's office.

4.    No proceeding is now pending in California for the administration of my grandmother's estate. [Cal. Code Civ. P. 377.32(a)(3)]. Thus, my grandmother's estate has no personal representatives since there is no court-appointed executor or administrator of the estate.

5.    My sisters and I are equal beneficiaries of my grandmother's trusts, and none of us has an interest superior to another.

6.    As a result, no other person has a superior right to me or my sisters to be substituted for the decedent in the pending action or proceeding. [Cal. Code Civ. P. 377.32(a)(6)].

7.    I seek to continue my grandmother's action as my grandmother's successor in interest. I am a successor in interest as defined in Section 377.11 of the California Code of Civil Procedure ("For the purposes of this chapter, "decedent's successor in interest" means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action.").

---

8.      My sisters, Seher Basak and Sarah Sakinah Groza O' Laughlin, are currently living at our family home at 2452 Blackton Drive, San Diego CA 92105 and intend to continue doing so.

9.      Attached hereto as Exhibit A is a true and correct copy of the The Margarette Smith Trust dated March 13, 2003.

10.     Attached hereto as Exhibit B is a true and correct copy of the Will of Margarette Smith dated May 31, 2005.

11.     Attached hereto as Exhibit C is a true and correct copy of the First Amendment To The Margarette Smith Trust dated May 31, 2005.

12.     Attached hereto as Exhibit D is a true and correct copy of my mother's, Lynette Ethan-Groza's Certificate of Death issued by the County of San Diego.

13.     Attached hereto as Exhibit E is a true and correct copy of my grandmother's, Margarette Smith's Certificate of Death issued by the County of San Diego.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this _20_ th day of July 2017.

Zarah Kimble

DECLARATION OF ZARAH KIMBLE

3

**EXHIBIT A**

# THE MARGARETTE SMITH TRUST

| | |
|---|---|
| NAME OF TRUSTOR: | **MARGARETTE SMITH** |
| DATE TRUST SIGNED: | **MARCH 18, 2003** |
| NAME OF TRUST: | **THE MARGARETTE SMITH TRUST** |
| NAME OF INITIAL TRUSTEE: | **MARGARETTE SMITH** |
| NAME OF SUCCESSOR TRUSTEE: | **STEPHANIE SPIERS** |

## PLEASE READ, IMPORTANT INFORMATION:

It is important to remember that SMITH assets will <u>not</u> be distributed according to this Trust <u>unless</u> the assets are transferred <u>into</u> the Trust. Therefore, do not forget to have the title to all of your assets in the name of the Trust. At the time you acquire another asset be sure to title it in the name of the Trust. The title of your assets transferred into the Trust should have the following name:

**"MARGARETTE SMITH, TRUSTEE OF THE MARGARETTE SMITH TRUST DATED MARCH 18, 2003."**

During the lifetimes of the Trustors (if the Trustor is also the Trustee) there is no requirement for the Trust to obtain a special tax identification number. Also, the Trust does <u>not</u> have to file a separate income tax return during the lifetimes of the Trustors.

**DO NOT WRITE ON OR CHANGE THIS TRUST WITHOUT THE ASSISTANCE OF AN ATTORNEY.**

Should you sign a document transferring the assets of the Trust, such as a check, deed or other document, it must be signed as follows:

**"MARGARETTE SMITH, TRUSTEE OF THE MARGARETTE SMITH TRUST DATED MARCH 18, 2003."**

Virginia L. Weber, Inc.
A Law Corporation
4817 Santa Monica Avenue, Suite D
San Diego, CA 92107
(619)222-5500 (619)222-5517 Fax

# THE MARGARETTE SMITH
# TRUST DATED MARCH 18, 2003

**MARGARETTE SMITH**, of San Diego, California, hereinafter called "Trustor," and "Trustee," enters into this Trust Agreement on March 18, 2003. The term Trustee shall also refer to any Successor Trustee as provided for in this document. Trustor hereby transfers and delivers to the Trustee, without consideration moving from it, all the property described in Schedule "A," attached hereto, to constitute, together with any other property that may become subject to this Trust (the "Trust Estate"), to be held, administered and distributed by the Trustee as provided in this Trust (hereinafter, the "Trust").

## ARTICLE I
## RIGHTS RESERVED TO TRUSTOR

1.1     <u>Addition to Trust</u>:  The Trustor, or any other person or legal entity, may at any time, either before or after the death of a Trustor, add other property acceptable to the Trustee to the Trust Estate by conveyance, assignment, transfer or Will.  Such property, when received and accepted by the Trustee, shall become part of the Trust Estate and be subject to all the terms and provisions of this Trust.

1.2     <u>Power to Change or Revoke Trust</u>:  While living and competent, the Trustor may, at any time and from time to time, by written notice signed by Trustor and delivered to the Trustee:

(a)     Revoke or change the interest in the Trust created, or to be created, pursuant to this Trust of any beneficiary named in this Trust to such extent as may be acceptable to the Trustee.

(b)     Amend or alter any provision of this Trust, or any amendment to this Trust, to such extent as may be acceptable to the Trustee.

(c)     Revoke, in whole or in part, any Trust or Trusts created by, or to be created, pursuant to this Trust.

(d)     Withdraw all or any part of the Trust Estate.

1.3     <u>Effect of Amendment or Revocation</u>:  Any amendment or revocation shall take effect when and if the required writing is received by the Trustee, but any such amendment or revocation shall not affect any lawful act of the Trustee prior to receipt by the Trustee of the required writing.  Notwithstanding the foregoing, the Trustee shall not be obligated to act under any amendment unless it accepts the same in writing.

1.4     <u>Trust Irrevocable upon Death of Trustor</u>:  On the death of one of the Trustor, the Trust created by this Trust shall become irrevocable and not subject to amendment or modification.

M.S.

# ARTICLE II
## DISTRIBUTION OF INCOME AND PRINCIPAL

2.1   <u>Income Distribution</u>:  During the lifetime of the Trustor, the Trustee shall pay to or apply for the benefit of Trustor, in monthly or other convenient installments, but in any event, at least annually, the entire net income of the Trust Estate, unless otherwise directed in writing by the Trustor.  Any income not distributed shall be added to the Trust Estate.

2.2   <u>Invasion of Corpus</u>:  Should the net income of the Trust Estate be insufficient to provide for the care, maintenance, or support of the Trustor as herein defined, the Trustee may, in the Trustee's absolute discretion, pay to, or apply for the benefit of, the Trustor, or any of his dependents, such amounts from the principal of the Trust Estate as the Trustee may, in the Trustee's discretion, from time to time deem necessary or advisable for the care, maintenance, or support of the Trustor.  As used in this section, the term "care, maintenance, or support of the Trustor" shall mean the following:

(a)   The provisions of proper care, maintenance, and support for the Trustor during any period of illness, or other want or necessity;

(b)   The maintenance of the Trustor in the manner of living to which he is accustomed on the date of this Trust;

(c)   The support and maintenance of any person, in the manner in which they are accustomed on the date of this Trust, whether adult or minor, dependent or minor, dependent on the Trustor for support and maintenance; and

(d)   The education of any person, in the manner desired by the Trustor, whether adult or minor, dependent on the Trustor for such education.

2.3   <u>Incompetency of Trustor</u>:  Should Trustor become incompetent and unable to manage his own affairs, either temporarily or permanently, and is so certified as incompetent by two physicians licensed in the United States, the Trustee may, in the Trustee's discretion, apply such portion of the net income and principal of the Trust Estate as set forth in Sections 2.1 and 2.2 above, as the Trustee may deem, in its discretion, reasonable and proper for the benefit of the Trustor so adjudged to be incompetent or unable to manage his or her own affairs.

2.4   <u>Primary Trust Purpose</u>:  The primary purpose and intent in creating this Trust is to provide for the care, comfort and happiness of the Trustor and, the rights and interests of remaindermen are subordinate and incidental to that purpose.  The provisions of this Trust shall be liberally construed in the interest, and for the benefit, of the Trustor and, without any obligation herein set forth or implied, to preserve or conserve any of the Trust Estate for any subsequent beneficiaries.

*M.S.*
M.S.

-3-

## ARTICLE III
## SUCCESSOR TRUSTEE

3.1    Identity:   Trustor retains the power to nominate a Co-Trustee or Successor Trustee, whether corporate or individual, and such power of nomination shall be revocable.  Provided Trustor does not exercise the power stated and nevertheless fails to act, or ceases to act, as Trustee, then **STEPHANIE SPIERS** shall forthwith become Successor Trustee of the Trust provided for in this Trust, and I direct that she shall serve without bond, succeeding in the title of the Trustee to the Trust Estate and to all powers, rights, discretions, obligations and immunities of the Trustee under this Trust with the same effect as though such Successor were originally named as Trustee in this Trust.  In the event she cannot act as Successor Trustee, then **LYNNETTE GROZA**, shall forthwith become Successor Trustee of the Trust provided for in this Trust, and I direct that she shall serve without bond, succeeding in the title of the Trustee to the Trust Estate and to all powers, rights, discretions, obligations and immunities of the Trustee under this Trust with the same effect as though such Successor were originally named as Trustee in this Trust.

If any individual Trustee is unable to participate in trust activities because of illness, disability, or any other reason, the designated Successor Trustee may act as Trustee during any such incapacity.  In determining the disability of the individual Trustee, the Successor Trustee may rely on written statements from two licensed physicians who have examined the Trustee.

3.2    Liability of Successor Trustee:  Any Successor Trustee shall be relieved of any and all liability for any acts or omissions of any predecessor Trustee in respect to the administration of the Trust Estate, and shall not be responsible for any assets not registered in the Trust name.

3.3    Trustee's Fees:  For its services as Trustee, the Trustee may elect to receive reasonable compensation for services according to currently accepted standards of reasonableness as set forth by the California Probate Code.

3.4    Resignation of Trustee:  The Trustee shall have the right to resign at any time, upon thirty (30) days prior written notice given to each beneficiary.

## ARTICLE IV
## ADMINISTRATION AND DISTRIBUTION

4.1    Payment of Trustor's Funeral Expenses, Death  and Estate Taxes:  Upon the death of the Trustor, the Trustee, in its sole discretion, may pay out of income or principal of the Trust Estate, any lawful debts of the decedent and, in whole or in part, the expenses of the Trustor's last illness, funeral, burial expenses, administration of the probate estate, if any, and, any inheritance, estate, or other taxes that may be due by reason of her death, whether in connection with this Trust or transfers outside of this Trust, unless the Trustee shall determine, in its absolute discretion, that other provisions have been made for such expenses and taxes.  Any payments under this paragraph shall be made without apportionment or adjustment among the beneficiaries.

*M S*
M.S.

-4-

4.2 <u>Distribution</u>: After payment or provision for payment of the expenses and costs set forth above, the Trustee shall divide the Trust Estate into two (2) equal shares and distribute them to **STEPHANIE SPIERS** and **LYNNETTE GROZA**, equally. In the event one of them should predecease the Trustor with children, their share shall pass to their issue. In the event one of them should predecease the Trustor without children, their share shall lapse and pass to the survivor.

4.3 <u>Trustee Payment Authority Conclusive</u>: The Trustee, in exercising discretionary authority with respect to the payment of income or principal of the Trust Estate to any beneficiary, shall take into consideration any income or other resources available to such beneficiary from sources outside of this Trust that may be known to the Trustee. The Trustee may accept as final and conclusive the written statement of the beneficiary receiving payment as to any other available income or resources. The determination of the Trustee with respect to the advisability of making payment out of income or principal to any beneficiary shall be conclusive on all persons whosoever interested in the Trust.

4.4 <u>Occupation of Real Property</u>: The Trustee, in its discretion, may permit any person who has a right to receive income currently from the Trust Estate to occupy any real property forming a part of the Trust Estate. The term of such occupation shall be rent-free or, in consideration of full or partial payment of taxes, insurance, maintenance and ordinary repairs, and shall be entirely within the discretion of the Trustee. It is my wish that my home not be sold until Ten (10) years from the date of my death.

4.5 <u>Alternate Income and Principal Payments</u>: If, at any time, any beneficiary entitled to receive income or principal from the Trust Estate is a minor or an incompetent or a person who the Trustee deems unable to handle funds properly or wisely if paid directly to the beneficiary, the Trustee, in its discretion, may make payments in any one or more of the following ways:

(a) Directly to the beneficiary;

(b) To the natural guardian or legally appointed guardian or conservator of the person or estate of the beneficiary;

(c) By making expenditures directly for the care, support, maintenance or education for the beneficiary; or

(d) To any person or organization furnishing care, support, maintenance or education for the beneficiary.

The Trustee shall not be required to see to the application of any fund paid or applied in any of the aforementioned ways and the receipt of the payee shall be full acquittance to the Trustee. The decision of the Trustee as to which of the aforementioned methods should be used in making payments shall be conclusive and binding on all parties concerned.

M.S.

4.6     Termination of Trust:  Upon division and distribution of the residuary Trust Estate as set forth above, the Trustee shall distribute each and every share so allocated to each beneficiary free of Trust and, this Trust shall terminate.

# ARTICLE V
# POWERS OF TRUSTEE

5.1     Vested Powers of Trustee:  To carry out the purposes of any Trust created under this instrument and subject to any additions or limitations stated elsewhere in this Trust agreement, the Trustee is vested with the following powers with respect to the Trust Estate, and any part of it, in addition to those powers now or hereafter conferred by law:

(a)     Power to Retain Property:  The Trustee shall have the power to retain any asset of the trust that came from the Trustor, including unproductive, speculative, or fluctuating assets.  The Trustee shall not be liable for any resulting losses unless the executor acts in bad faith, willful misconduct, or gross negligence.

(b)     Power to Operate Business:  To continue or participate in any business or other enterprise at the risk of the Trust Estate and, to effect incorporation, dissolution or other change in the form of organization of the business or enterprise.

(c)     Power of Sale, Exchange, Repair, Etc.:  To manage, control, grant options on, sell (for cash or on deferred payments), convey, exchange, partition, divide, subdivide, improve and repair Trust property; and to create restrictions, easements and other servitudes, with or without considerations.

(d)     Power to Lease:  To lease Trust property for terms within or beyond the term of the Trust and for any purpose, including exploration for and removal of gas, oil and other minerals, to enter into community oil leases, pooling and unitization agreements.

(e)     Power to Borrow:  To borrow money, and to encumber or hypothecate Trust property by mortgage, deed of trust, pledge or otherwise.

(f)     Power to Insure:  To carry, at the expense of the Trust, insurance of such kinds and in such amounts as the Trustee deems advisable to protect the Trust Estate and the Trustee against any hazard.

(g)     Power to Commence or Defend Litigation:  To commence or defend such litigation with respect to the Trust or any property of the Trust Estate as the Trustee may deem advisable, at the expense of the Trust.

(h)     Power to Compromise Claims:  To compromise or otherwise adjust any claims or litigation against or in favor of the Trust.

(i)     Investment Powers:  To invest and reinvest the Trust Estate in every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, corporate obligations of every kind, stocks, common or preferred or mutual funds, and mortgage participations, which persons of

*M S*
M.S.

-6-

prudence, discretion and intelligence acquire for their own account, and any common trust funds administered by the Trustee.

      (j)    <u>Power to Manage Securities</u>:  With respect to securities held in the Trust, to have all the rights, powers and privileges of any owner, including, but not by way of limitation, the power to vote, give proxies and pay assessments; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, liquidations, sales and leases, and incident to such participation to deposit securities with and transfer title to any protective or other committee on such terms as the Trustee may deem advisable; and, to exercise or sell stock subscription or conversion rights, provided, however, that the corporate trustee may vote its own shares in the election of directors only in the manner determined and directed by Trustor, during their lifetimes, or, after Trustor' deaths, by the beneficiary or a majority of the beneficiaries of the Trusts hereunder containing such shares.

      (k)    <u>Power to Hold Property in Nominee</u>:  To hold securities or other property in the Trustee's own name or in the name of its nominee with or without disclosing any fiduciary relationship.

      (l)    <u>Power to Advance Funds</u>:  To loan or advance the Trustee's funds to the Trust for any Trust purpose with interest at then current rates, constituting a first lien upon the entire Trust Estate and being repaid out of principal or income.

      (m)    <u>Power to Budget</u>:  To budget the estimated annual income and expenses of the Trusts in such manner as to equalize, as far as practicable, periodic income payment to beneficiaries.

      (n)    <u>Determination of Principal and Income</u>:  Except as otherwise specifically provided in this instrument, the determination of all matters, with respect to what is principal and income of the Trust Estate and the apportionment and allocation of receipts and expenses between these accounts, shall governed by the provisions of the California Principal and Income Law from time to time existing.  Any such matter not provided for either in this Trust agreement or in the Principal and Income Law shall be determined by the Trustee, in its discretion.

      (o)    <u>Division and Distribution in Kind</u>:  In any case in which the Trustee is required, pursuant to the provisions of the Trust, to divide any Trust property into parts or shares for the purpose of distribution, or otherwise, the Trustee is authorized, in the Trustee's absolute discretion, to make the division and distribution in kind, including undivided interest in any property or partly in kind and partly in money, and for this purpose, to make such sales of the Trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit.  Trustee shall be under no obligation to make a pro rata division, or to distribute the same assets to beneficiaries similarly situated; but, rather, the Trustee may, in its discretion, make a non-pro rata division between Trusts or shares and non-pro rata distributions to such beneficiaries, as long as the respective assets allocated to separate Trusts or shares distributed to such beneficiaries have equivalent or proportionate fair market value.

      (p)    <u>Transactions with Estate of Trustor</u>:  If the Trustee deems it necessary or advisable for the protection of the estate of the Trustor, or in the best interest of each estate or this Trust and beneficiaries thereof, the Trustee, in its sole and

*M S*

M.S.

absolute discretion, may, with Trust funds, purchase any securities or other property at a fair value from the legal representative of such estate and retain such property as part of the Trust Estate and make secured or unsecured loans of Trust funds at the then current rate of interest, to such legal representative, without any liability for loss resulting to the Trust Estate by reason of such purchase or loan.

(q)   Power to Invest in Life Insurance:  The Trustee shall have the power to apply for, own, receive as a part of the Trust assets, hold and/or pay premiums upon, life insurance in any form and upon the life of any person or persons, as the Trustee may deem advisable.  The Trustee is authorized to exercise all rights under such policies and no company issuing the same shall be required to determine the extent of the authority of the Trustee.

(r)   Power to Adjust for Tax Consequences:  The Trustee shall have the power, in the Trustee's absolute discretion, to take any action and to make any election to minimize the tax liabilities of this Trust and its beneficiaries, and to allocate the benefits among the various beneficiaries, and to make adjustments in the rights of any beneficiaries, or between the income and principal accounts, to compensate for the consequence of any tax election or any investment or administrative decision that the Trustee believes has had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over others.

(s)   Power to Purchase Discount Treasury Bonds:  The Trustee shall have the power to purchase, at less than par, obligations of the United States of America redeemable in payment of any federal estate tax liability of Trustor' estate in such amounts as Trustee deems advisable.  Trustee may borrow funds and give security in order to effect a purchase and shall resolve any doubt concerning the desirability of making the purchase or in purchasing a larger amount than may be necessary.  Trustee shall incur no liability for losses resulting from a decision either to purchase or not to purchase, which is made in good faith.

(t)   Employment of Consultants:  The trustee may employ custodians, attorneys, accountants, investment advisers, corporate fiduciaries, or any other agents or advisers to assist the trustee in the administration of this trust and may rely on the advice given by these agents.  The trustee shall pay reasonable compensation for all services performed by these agents from the trust estate out of either income or principal as the trustee in the trustee reasonable discretion determines.  These payments shall not decrease the compensation to which the trustee is entitled.

(u)   Power to Appoint Special Trustee:  Trustee shall have the power to appoint and remove a special trustee (individual or corporate) for such purposes as dealing with assets outside California.  A special trustee shall have only those powers which are necessary, as enumerated herein, or otherwise permitted by law.  Trustor shall exercise their discretion in compensating a special Trustee and determining if bond should be required.  Expenses of a special trustee shall be a charge against the Trust in addition to Trustee's compensation.

(v)   Power to Pay Off Mortgage with Life Insurance Proceeds: Trustee may pay off the mortgage on real property owned by Trustor.

*M S*
M.S.

(w)    General Powers of Trustee:  The enumeration of certain powers of the Trustee shall not limit its general powers, and the Trustee, subject always to the discharge of its fiduciary obligations, is vested with, and shall have, all the rights, powers and privileges which an absolute owner of the same property would have.

(x)    Depreciation Reserve - Mandatory:  The trustee shall establish reasonable reserves for depreciation, notwithstanding any other provision of this instrument or the California Revised Uniform Principal and Income Act.

(y)    Death Taxes of Beneficiary:  The trustee, in the trustee's discretion, shall have the power to pay from the trust estate, and to allocate between income and principal, any death taxes to the extent that such taxes are attributable to the trust estate or any part of it (calculated at the average rates applicable to such tax). However, any trust property otherwise exempt from federal estate tax shall not be subject to the payment of any such death taxes.

(z)    Beneficiary's Last Illness or Funeral Expenses:    The trustee shall have the power, in the trustee's reasonable discretion, to pay the last illness expenses, funeral expenses, and other obligations incurred for the beneficiary's support from the income or principal of the beneficiary's trust.

## ARTICLE VI
## MISCELLANEOUS PROVISIONS

The following additional provisions shall apply to this Trust Agreement and to all Trusts created hereunder:

6.1    Spendthrift Provision:  No interest in the principal or income of any Trust created under this instrument shall be voluntarily or involuntarily anticipated, assigned or encumbered, or subject to any creditor's claim or to legal process, prior to its actual receipt by the beneficiary.

6.2    No Physical Division of Trust Property Required:  There need be no physical segregation or division of the various Trusts except as segregation or division may be required by the termination of any of the Trusts, but the Trustee shall keep separate accounts for the different undivided interest.

6.3    Income Accrued or Undistributed:  Income accrued or unpaid on Trust property when received into the Trust shall be treated as any other income.  Income accrued or held undistributed by the Trustee at the termination of any Trust created hereunder shall go to the next beneficiaries of the Trust in proportion to their interest in the Trust.  This provision shall not apply to interest accrued on Treasury bonds redeemed in payment of either Trustor's federal estate tax.  The Trustee shall not be required to prorate taxes and other current expenses to the date of distribution.

6.4    Challenge to Trust Provisions: Except otherwise provided herein, the settlor has purposely omitted to provide herein for any of her heirs at law.  If any beneficiary of this trust or any trust created under this trust, singly or in conjunction with any other person:

*M.S.*

1. Contests by a claim of undue influence, fraud, menace, duress or testamentary capacity, or otherwise objects in any court to the validity of any of the following documents or amendments or codicils thereto (hereafter 'Document' or 'Documents') or of any of their provisions:

   a. this trust;
   b. any other trust created pursuant to this trust;
   c. Settlor's Will;
   d. any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension or profit sharing plan or insurance policy signed by the Settlor;

2. Seeks to obtain an adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify or set aside a Document or any of its provisions;

3. Files suit on a creditor's claim filed in a probate of Settlor's estate, against settlor's trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

4. Files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already so characterized by a Document;

5. Claims ownership in a court proceeding to any asset held in joint tenancy by the settlor, other than as surviving joint tenant;

6. Files a petition for probate homestead in a probate proceeding of settlor's estate;

7. Files a petition for family allowance in a probate of settlor's estate; or

8. Participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of the above actions;

then the right of such beneficiary to take any interest given to him or her under this trust or any trust created pursuant to this trust shall be determined as it would have been determined had such beneficiary predeceased the Settlor without surviving issue;

The Trustee is hereby authorized to defend, at the expense of the trust estate, any violation of this paragraph. Notwithstanding the foregoing a 'contest' shall include any action described above in an arbitration proceeding and shall NOT include any action described above solely in a mediation not preceded by the filing of a contest with the court.

6.5   <u>Notice of Events Affecting Interest</u>:  Unless the Trustee has received actual written notice of the occurrence of an event affecting the beneficial interest of this Trust, the Trustee shall not be liable to any beneficiary of this Trust for any distributions made as though such event had not occurred.

6.6   <u>Termination of Trust Under $20,000</u>:  In the event that the share or separate Trust held for beneficiary has at any time a total value of less than Twenty Thousand Dollars ($20,000), the Trustee may in its discretion, distribute the entire share or Trust, whereupon said Trust shall terminate.

6.7   <u>Definition of "Issue" and "Children"</u>:  As used herein, the term "Issue" shall refer to lineal descendants of all degree, and the term "child," "children," and "issue" shall include adopted persons.

*M.S.*
M.S.

-10-

6.8     Definition of "Education":  Whenever provisions are made herein for payment for the "education" of a beneficiary, the term "education" shall be construed to include, without limitation, college, postgraduate study, trade or vocational school or other career preparation, so long as pursued to advantage by the beneficiary, at an institution of the beneficiary's choice; and, in determining payments to be made, the Trustee shall take into consideration the beneficiary's related living, medical and transportation expenses to the extent that they are reasonable.

6.9     Accounting:  Any and all accountings shall be made annually or at other reasonable intervals as determined by the Trustee, to the beneficiaries of the Trust or to their legal guardians or conservators or to the parents or guardians of any minor beneficiaries.  Unless one or more of the beneficiaries (or parent, guardian or conservator) shall deliver a written objection to the Trustee within ninety (90) days of receipt of the Trustee's account, the account shall be deemed settled and shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries.  After settlement of the account by reason of the expiration of the ninety (90) day period referred to above, or by agreement of the parties, the Trustee shall no longer be liable to any beneficiary of the Trust, including unborn and unascertained beneficiaries, in respect to transactions disclosed in the account, except for the Trustee's intentional wrongdoing or fraud.

6.10    Construction and Purpose:  The primary purpose of this Trust Agreement is to provide for the Trustor's income beneficiaries, and the rights and interests of remaindermen are subordinate to that purpose.  The provisions of this Trust shall be construed liberally in the interest of and for the benefit of the Trustor.

6.11    Severability:  If any provision of this instrument is unenforceable, the remaining provisions shall nevertheless be carried into effect.

6.12    Number and Gender, Headings:  As used in this instrument, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.  The headings in this instrument are inserted for convenience of reference and are not to be considered in construction hereof.

6.13    Authority of Trustee:  No person paying money or delivering any property to the Trustee need see to its application.

## ARTICLE VII
## THE CHILDREN'S TRUST

All trust property allocated to the Children's Trust shall be administered as one or more separate trusts, according to the terms of this Trust Agreement, specifically including the following provisions.  All references in this Trust Agreement to the 'Children's Trust" shall be to the trust or trusts established under this article.

7.1     Division into Shares.  All property in the Children's Trust and any property added to the Children's Trust shall be divided, by right of representation, into separate trust shares, one trust share for each of my children who are beneficiaries in Article 4 then living and one trust share collectively for the living issue of any deceased child who are beneficiaries in Article 4.  Any collective share for the living issue of a deceased

-11-

M.S.

child shall be divided (or continue to be divided) among further successor trust shares for those issue by right of representation.  Each trust share shall be held in trust as provided in the remaining sections of this article.  Each trust share shall be a separate trust for all purposes and be named for its current income beneficiary.

7.2    <u>Distributions of Net Income and Principal</u>.  The Trustee may distribute to the current beneficiary of each trust, at such times as the Trustee determines, so much of the net income or principal of the trust as the Trustee deems proper for the following purposes:  (1) to support the beneficiary in accordance with the beneficiary's accustomed manner of living; (2) to pay for medical, dental, hospital, nursing, and other health care services, and other costs relating to the health care of the beneficiary; and (3) to pay for the education of the beneficiary.

7.3    <u>Limitations on Distributions</u>.  It is not my intention to have any able adult beneficiary rely solely or primarily upon distributions of income or principal from the trust for his or her support.  The Trustee shall not be required to make distributions to any adult beneficiary who is not diligently pursuing an educational degree, raising children, actively engaged in charitable activities on a substantially full time basis, or productively employed, unless the beneficiary is prevented from engaging in such activities by poor health or other good cause.

7.4    <u>Additional Distributions of Principal</u>.  After a trust has been established under the provisions of this article for a beneficiary and has been administered for at least two (2) months, the following provisions shall apply:

When the beneficiary has attained the age of Twenty-Five (25) years, the Trustee shall distribute one-half (½) of the beneficiary's share of the Trust Estate. When the beneficiary has attained the age of Thirty (30) years, the Trustee shall distribute Twenty Percent (20%) of the beneficiary's share of the trust estate.     When the beneficiary has attained the age of Twenty-Five (25) years, the Trustee shall distribute Thirty Percent (30%) of the beneficiary's share of the trust estate.   When the beneficiary has attained the age of Thirty (30) years, the Trustee shall distribute Thirty-Five Percent (35%) of the beneficiary's share of the trust estate.   When the beneficiary has attained the age of Thirty-Five (35) years, the Trustee shall distribute the remainder of the beneficiary's share of the trust estate.

Distribution of the minor's share of the balance of the Trust Estate shall be made when the age of Twenty-Three (23) is obtained.  The Trustee is not required to make any distribution permitted under these provisions.

7.5    <u>Establishment of Trusts for Successor Beneficiaries</u>.  Unless otherwise provided in this Trust Agreement, if a current beneficiary (including any successor current beneficiary) dies after a separate trust has been established for him or her, but before receiving full distribution of that trust, the portion of the trust not appointed by the beneficiary pursuant to any power of appointment granted to him or her shall continue in trust for successor beneficiaries to be determined as follows:

(a)  For the beneficiary's issue.  If the current beneficiary's children or other issue survive him or her, the Trustee shall divide the property, by right of representation, into separate trusts for the surviving issue of the deceased beneficiary.

*M S*
M.S.

(b)  For the beneficiary's brothers and sisters.  If the current beneficiary dies without surviving issue, the Trustee shall divide the property into separate equal trust shares among his or her surviving brothers and sisters, provided that one equal share shall pass, by right of representation, for the benefit of the surviving issue of any deceased brother or sister.

(c)  For my issue.  If the current beneficiary dies without surviving issue and without any surviving brothers or sisters or surviving issue of deceased brothers or sisters, the property shall be allocated to a separate trust for the beneficiary's nearest then living ancestor who is my issue.  If there is no such ancestor, the Trustee shall divide the property, by right of representation, among separate trust shares for the surviving issue of the beneficiary's nearest ancestor who was my issue, and if there are no such issue then living, by right of representation among separate trust shares for my issue who survive the beneficiary.

(d)  For other existing shares.  If the current beneficiary dies without surviving issue and without surviving brothers or sisters or surviving issue of deceased brothers or sisters and none of my issue survives the beneficiary, the whole of the beneficiary's remaining trust shall be added to the remaining trusts established under this article, whether distributed or undistributed, in the proportions in which those trusts participated in the original trust estate.  Any addition to a trust that at that time has been wholly distributed shall be distributed to the beneficiary of the trust.  If a trust's beneficiary is then deceased, the addition shall be distributed in the manner provided in this Trust Agreement as if the beneficiary had died before becoming entitled to distribution of his or her entire trust.  Any addition to a trust that at that time has been partially distributed shall augment proportionately the distributed and undistributed portions of the trust.  Any addition to a trust over which a power of appointment has been exercised shall be held in a separate trust or distributed as if the power had not been exercised, unless the instrument exercising the power specifies the manner in which a subsequent addition to the trust shall be distributed.

7.6    Administration of Trusts for Successor Beneficiaries.  Except as otherwise expressly provided above, each of the trust shares and subdivided trust shares created under the foregoing provisions for successor beneficiaries shall be administered as separate trusts for the successor beneficiaries under the same provisions as applied to the prior beneficiary's trust.

-13-

*M S*
M.S.

ARTICLE VIII
CERTIFICATION OF MARGARETTE SMITH

I, **MARGARETTE SMITH**, do certify that:

8.1     I have read the foregoing Trust.

8.2     The foregoing Trust correctly states the terms and conditions under which the Trust Estate is to be held, managed, administered, and disposed by the Trustee;

8.3     I approve such Trust in all particulars; and

8.4     As the Trustee named in such Trust I approve and accept the Trust provided for in such Trust.

EXECUTED March 18, 2003, at San Diego County, California.


*Margarette Smith*

**MARGARETTE SMITH**

*(See Notary Acknowledgment on Page 15)*

-14-

M.S.

# THE MARGARETTE SMITH TRUST
## DATED MARCH 18, 2003

State of California     )
                        ) ss.
County of San Diego )

On , March 18, 2003, before me, Lori Bolander,  Notary Public, personally appeared **MARGARETTE SMITH**, and proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the same.

WITNESS my hand and official seal.

LORI BOLANDER
Commission # 1304817
Notary Public - California
San Diego County
My Comm. Expires May 17, 2005

**Notary Public**

-15-

M.S.

# THE MARGARETTE SMITH TRUST
## DATED MARCH 18, 2003

Schedule "A"
Transfer of Assets

I, **MARGARETTE SMITH**, hereby transfer and convey to the Trustee of **THE MARGARETTE SMITH TRUST DATED MARCH 18, 2003**, all of my right, title and interest in and to all jewelry, objects of art, clothing, household furniture and furnishings, automobiles and all other personal effects, and all other real and personal property that I own now or acquire later during my lifetime; and all cash, bank accounts, stocks and bonds, general and limited partnership interests, promissory notes and trust deeds payable to me, or my interest in any such property, together with any insurance on such property.

This transfer of assets shall be binding and effective as to my heirs and assigns.

**Real Estate:**
2452 Blackton Drive
San Diego, CA 92105

I hereby agree to sign such documents and take such actions as are necessary to effectuate the aforesaid transfer as a matter of public record.

In my capacity as Trustee of **THE MARGARETTE SMITH TRUST DATED MARCH 18, 2003**, I hereby accept transfer and delivery of the above stated assets.

Executed on March 18, 2003, in San Diego, California.


*Margarette Smith*
MARGARETTE SMITH


*M S*
M.S.

**EXHIBIT B**

# WILL of MARGARETTE SMITH

I, MARGARETTE SMITH, a resident of San Diego County, California, declare this to be my will.

## DIVISION ONE INTRODUCTION

A. Revocation. I revoke all wills and codicils that I have previously made.

B. I am a widowed woman.

C. Children and Issue. The names of my children are:

LYNNETTE ETHAN-GROZA
STEPHANIE SPIERS

I have no other children neither living nor deceased. All references in this will to my "children" are to the children just named and no others, except that the term shall also include any child or children hereafter born to or adopted by me. All references in this will to my "issue" are to my children as so defined and their issue. I intentionally fail to provide for STEPHANIE SPIERS.

D. No Contract to Make Wills. I have not entered into any contract to make this will, and any similarity of the provisions of this will to the provisions of a will of my spouse shall not be construed as evidence of such a contract.

## DIVISION TWO GIFTS OF PROPERTY

A. Gift to Trust. I give all of my estate to the trustee then in office of the trust identified below, to be held and administered by the trustee according to the terms and conditions of that trust including, without limitation, any amendment made to it before my death:

Trust: THE MARGARETTE SMITH TRUST, dated March 18, 2003 and any amendments thereto..

B. Alternate Disposition. If at the time of my death my estate is not permitted by law to be distributed to the trustee, or if the trust is not then in existence, is revoked after the date of my will, or fails for any reason, I give the residue of my estate to LYNNETTE ETHAN-GROZA, as trustee, to be held, administered, and distributed as follows:

MS

pursuant to the terms of the trust written on the same date as the execution of this will, regardless of its validity.

DIVISION THREE EXECUTORS AND GUARDIANS

A. Nomination of Executors. I nominate the persons listed below, in the order and priority indicated, as executor and alternate or successor executor of my will:

First: LYNNETTE EHTAN-GROZA
Second: ZARAH GROZA-SHROOKI

I request that no bond be required of any executor nominated in my will.

B. Power to Sell or Lease Estate Property. My executor may sell or lease, with or without notice, at either public or private sale, for cash or terms, any property of my estate that my executor considers necessary for the estate's proper administration and distribution.

C. Nonprorata Distributions. When making any division or distribution of property, the executor may, in the executor's discretion, make the division and distribution in undivided interests, in kind, or partly in kind and partly in money, prorata or nonprorata. The trustee may make sales of the trust property that the trustee considers necessary to accommodate such distributions.

Signed on _May 31, 2005_, at _SAN DIEGO_____, California.

_Margarette Smith_
MARGARETTE SMITH

On the date written below, the testator, MARGARETTE SMITH, declared to us that this instrument, consisting of three pages including this page, was the testator's will and asked us to witness it. The testator then signed this will in our presence, all of us being present at the same time. At the testator's request, in the testator's presence, and in the presence of one another, we subscribe our names as witnesses.

We believe that the testator is 18 or more years of age, is of sound mind, and is

MS

under no constraint or undue influence.

*[signature]*                    *[signature]*

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _May 31, 2005_ at _SAN DIEGO_, California.

*[signature]*                    *[signature]*

Name and address:              Name and address:

Edith White                    AnnMarie Coppin

3232 4th Ave                   3872 Fifth Ave, #3

S.D., CA 92103                 SAN Diego, CA 92103

**EXHIBIT C**

FIRST AMENDMENT TO

THE MARGARETTE SMITH TRUST
Dated March 18, 2003


That certain trust declaration dated March 18, 2003, known
as THE MARGARETTE SMITH TRUST, of which MARGARETTE SMITH is the
original trustor and trustee, is hereby amended as noted herein,
it being the specific intent of the Trustor/ Settlor, and the
Trustee, to add, amend, and correct said trust.

Whereas, pursuant to ARTICLE I, section 1.2 of the trust,
Trustor/ Settlor has the power to amend the Trust at any time and
to revoke any portion of it at any time; and
Whereas, Trustor/Settlor desires to amend  the trust by this
within instrument;
Now, therefore, in consideration of the mutual covenants and
terms as contained herein, it is hereby agreed by and between the
parties hereto as follows:

ARTICLE I, section 1.2, of the trust is hereby amended by the
addition of the following provision (e):

(e)   Except for the power to change the distributive
portions of this trust the power of the Trustor to revoke or
amend this instrument is not personal to the Trustor, to the
extent that pursuant to Section 15401(c) of the California
Probate Code, the attorneys-in-fact (agents) who Trustor has
designated in a valid Power of Attorney, shall have the authority
to amend and/or revoke this Trust and to deal with any and all
assets of the trust as if said agent were also the successor
trustee of the trust, and as an agent regardless of the powers of
the successor trustee, provided said powers are expressly
authorized in the instrument appointing the attorney-in-fact that
makes specific reference to this trust.  There shall be no self-
dealing when exercising this power.

ARTICLE I, section 1.4 is hereby deleted in its entirety and the
following is substituted therefore:

1.4 <u>Trust Irrevocable upon Death of Trustor</u>: On the death of
the trustor, the Trust created by this instrument shall become
irrevocable and not subject to amendment or modification, except
by order of a court of competent jurisdiction.


ARTICLE II, section 2.3, <u>Incompetency of Trustor</u>, is hereby
deleted in its entirety and the following is substituted
therefore:

1

2.3 <u>Incompetency of Trustor</u>: Should Trustor become incompetent and unable to manage the trustor's own affairs, either temporarily or permanently, and is so certified as incompetent by both a licensed physician of the United States and by LYNNETTE ETHAN-GROZA or by both a licensed physician of the United States and by ZARAH GROZA-SHROOKI, the Trustee may, in the Trustee's discretion, apply such portion of the net income and principal of the Trust Estate as set forth in Sections 2.1 and 2.2 above, as the Trustee may deem, in the Trustee's discretion, reasonable and proper for the benefit of the Trustor so adjudged to be incompetent or unable to manage his or her own affairs.

ARTICLE III, section 3.1, <u>Identity</u>, is hereby deleted in its entirety and the following is substituted therefore:

3.1 <u>Identity</u>: Trustor retains the power to nominate a Co-Trustee or Successor Trustee, whether corporate or individual, and such power of nomination shall be revocable. Trustor hereby nominates **LYNNETTE ETHAN-GROZA** as Trustor's Co-Trustee as of the date of the signing of this amendment. If Trustor fails to act as Trustee, or ceases to act as Trustee, then **LYNNETTE ETHAN-GROZA** shall forthwith become Successor Trustee of the Trust provided for in this declaration, and I direct that she shall serve without bond, succeeding in the title of the Trustee to the Trust Estate and to all powers, rights, discretions, obligations and immunities of the Trustee under this Trust with the same effect as though such Successor were originally named as Trustee in this Trust.  In the event she cannot act as Successor Trustee, then **ZARAH GROZA-SHROOKI** shall forthwith become Successor Trustee of the Trust, and I direct that she shall serve without bond, succeeding in the title of the Trustee to the Trust Estate and to all powers, rights, discretions, obligations and immunities of the Trustee under this Trust with the same effect as though such Successor were originally named as Trustee in this Trust.

ARTICLE IV, section 4.2 <u>Distribution</u> is hereby deleted in its entirety and the following is substituted therefore:

4.2 <u>Distribution</u>: After payment or provision for payment of the expenses and costs set forth above, the Trustee shall distribute the trust estate as follows:

To LYNNETTE ETHAN-GROZA, one hundred per cent (100%) of the estate, outright.

The Trustor intentionally fails to provide for STEPHANIE SPIERS.

In the event that LYNNETTE ETHAN-GROZA fails to survive the Trustor, her share shall be distributed to her issue, in equal shares by right of representation.

2

MARGARETTE SMITH, Trustee

I, LYNNETTE ETHAN-GROZA hereby accept the office and duties of the Co-Trustee of this Trust.

LYNNETTE ETHAN-GROZA, TRUSTEE

3

I certify that I have read the foregoing FIRST AMENDMENT TO THE MARGARETTE SMITH TRUST,  and that it correctly states the terms and conditions under which the trust estate is to be held, managed, and disposed of by the trustees.   I approve the instrument in all particulars and request that the trustee(s) execute it.

Date: ___5/31/2005___          _Margarette Smith_____
                                MARGARETTE SMITH, Trustor


State of California )
                   )
County of San Diego )
                   )


     On _May 31, 2005_, before me, EDITH J. WHITE, a Notary Public, personally appeared MARGARETTE SMITH and LYNNETTE ETHAN-GROZA, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(S) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person, or the entity on behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Edith J. White_          [Seal]



EDITH J. WHITE
COMM. #1527554
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
NOVEMBER 18, 2008
CSC1    CSC1

4

5

**EXHIBIT D**

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF RIVERSIDE
### RIVERSIDE, CALIFORNIA

3052016155983     STATE FILE NUMBER     **CERTIFICATE OF DEATH**     3201633009169

STATE OF CALIFORNIA — USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS — VS-11 REV 3/06 — LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| | | |
|---|---|---|
| 1. NAME OF DECEDENT– FIRST (Given) LYNNETTE | 2. MIDDLE REGINA | 3. LAST (Family) GROZA |

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) **LYNNETTE R. ETHAN**

| 6. DATE OF BIRTH mm/dd/ccyy 08/22/1953 | 7. AGE Yrs. 62 | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX F |
|---|---|---|---|---|

| 9. BIRTH STATE/FOREIGN COUNTRY CALIFORNIA | 10. SOCIAL SECURITY NUMBER 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 | 11. EVER IN U.S. ARMED FORCES? ☐ YES ☒ NO ☐ UNK | 12. MARITAL STATUS/SRDP* (at Time of Death) MARRIED | 7. DATE OF DEATH mm/dd/ccyy 08/03/2016 | 8. HOUR (24 Hours) 1148 |

| 13. EDUCATION – Highest Level/Degree (see worksheet on back) ASSOCIATE | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? (if yes, see worksheet on back) ☒ NO | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) NATIVE AMERICAN |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED BUSINESS OWNER | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) TRUCKING AND TOWING | 19. YEARS IN OCCUPATION 20 |

**USUAL RESIDENCE**

20. DECEDENT'S RESIDENCE (Street and number, or location) **1274 BRUSH PRAIRIE COVE**

| 21. CITY SAN JACINTO | 22. COUNTY/PROVINCE RIVERSIDE | 23. ZIP CODE 92582 | 24. YEARS IN COUNTY 5 | 25. STATE/FOREIGN COUNTRY CALIFORNIA |

**INFORMANT INFORMATION**

| 26. INFORMANT'S NAME, RELATIONSHIP DIONISIE GROZA, HUSBAND | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) 1274 BRUSH PRAIRIE COVE, SAN JACINTO, CA 92582 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SRDP–FIRST DIONISIE | 29. MIDDLE - | 30. LAST (BIRTH NAME) GROZA |

| 31. NAME OF FATHER/PARENT–FIRST ULYSSES | 32. MIDDLE SAMUEL | 33. LAST SMITH | 34. BIRTH STATE COLORADO |

| 35. NAME OF MOTHER/PARENT–FIRST MARGARETTE | 36. MIDDLE DORIA | 37. LAST (BIRTH NAME) SUMMERFIELD | 38. BIRTH STATE CALIFORNIA |

**FUNERAL DIRECTOR/ LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy 08/12/2016 | 40. PLACE OF FINAL DISPOSITION GREENWOOD MEMORIAL PARK 4300 IMPERIAL AVENUE, SAN DIEGO, CA 92113 |

| 41. TYPE OF DISPOSITION(S) BU | 42. SIGNATURE OF EMBALMER ▶ JENNIFER SCHWAB | 43. LICENSE NUMBER EMB8687 |

| 44. NAME OF FUNERAL ESTABLISHMENT GREENWOOD MORTUARY | 45. LICENSE NUMBER FD 843 | 46. SIGNATURE OF LOCAL REGISTRAR ▶ CAMERON KAISER, MD | 47. DATE mm/dd/ccyy 08/10/2016 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH KINDRED HOSPITAL RIVERSIDE | 102. IF HOSPITAL, SPECIFY ONE ☒ IP ☐ ER/OP ☐ DOA | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE ☐ Hospice ☐ Nursing Home/LTC ☐ Decedent's Home ☐ Other |

| 104. COUNTY RIVERSIDE | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) 2224 MEDICAL CENTER DRIVE | 106. CITY PERRIS |

**CAUSE OF DEATH**

107. CAUSE OF DEATH — Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) ASPIRATION | Time Interval Between Onset and Death 1 HR | 108. WAS DEATH REPORTED TO CORONER? ☐ YES ☒ NO |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) CHRONIC RESPIRATORY FAILURE | 1 WK | REFERRAL NUMBER |
| (C) CONGESTIVE HEART FAILURE | YEAR | 109. BIOPSY PERFORMED? ☐ YES ☒ NO |
| (D) | | 110. AUTOPSY PERFORMED? ☐ YES ☒ NO |
| | | 111. USED IN DETERMINING CAUSE? ☐ YES ☐ NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 NONE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) NO | 113A. IF FEMALE, PREGNANT IN LAST YEAR? ☐ YES ☒ NO |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. Decedent Attended Since / Decedent Last Seen Alive | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ THANG DUY NGUYEN M.D. | 116. LICENSE NUMBER A78238 | 117. DATE mm/dd/ccyy 08/10/2016 |
| (A) mm/dd/ccyy 08/03/2016 (B) mm/dd/ccyy 08/03/2016 | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE THANG DUY NGUYEN M.D. 27830 BRADLEY ROAD, SUN CITY, CA 92586 | | |

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH ☐ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Pending Investigation ☐ Could not be determined | 120. INJURED AT WORK? ☐ YES ☐ NO ☐ UNK | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

125. LOCATION OF INJURY (Street and number, or location, and city and zip)

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |

| STATE REGISTRAR | A | B | C | D | E | *010001003316338* | FAX AUTH.# | CENSUS TRACT |

CARIVERSD1

---

### CERTIFIED COPY OF VITAL RECORD
#### STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the County of Riverside, Department of Public Health.

001437504

DATE ISSUED **Aug 16, 2016**



DR. CAMERON KAISER, MD
COUNTY HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

THE GREAT SEAL OF THE STATE OF CALIFORNIA — EUREKA

DEPARTMENT OF PUBLIC HEALTH — REGISTRAR OF VITAL RECORDS — COUNTY OF RIVERSIDE

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

**EXHIBIT E**

**CERTIFICATION OF VITAL RECORD**

# COUNTY OF SAN DIEGO

**CERTIFICATE OF DEATH**  3201737006862

STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS

STATE FILE NUMBER — LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| MARGARETTE | DORIA | SMITH |

AKA, ALSO KNOWN AS – Include Full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 08/08/1928 | 88 | | | F |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP* (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| CALIFORNIA | 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 | YES [X] NO [ ] UNK [ ] | WIDOWED | 04/18/2017 | 1503 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| SOME COLLEGE | YES [ ] NO [X] | NATIVE AMERICAN |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| REGISTERED NURSE | MEDICAL | 40 |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number, or location) |
|---|
| 2452 BLACKTON DRIVE |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| SAN DIEGO | SAN DIEGO | 92105 | 88 | CALIFORNIA |

**INFORMANT**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) |
|---|---|
| ZARAH KIMBLE, GRANDDAUGHTER | 9387 DIANE AVENUE, SPRING VALLEY, CA 91977 |

**SPOUSE/SRDP AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE/SRDP*—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| | | |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| ROBERT | D. | SUMMERFIELD | MISSOURI |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| BABE | NARSSISIE | CARTER | COLORADO |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 04/28/2017 | HOLY CROSS CEMETERY  4470 HILLTOP DRIVE, SAN DIEGO, CA 92102 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BURIAL | ► RUDEE SLAVIK | EMB9288 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| MERKLEY MITCHELL MORTUARY | FD119 | ► WILMA J WOOTEN, MD MPH | 04/21/2017 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| LEMON GROVE CARE & REHABILITATION CENTER | IP [ ] ER/OP [ ] DOA [ ] | Hospice [ ] Nursing Home/LTC [X] Decedent's Home [ ] Other [ ] |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| SAN DIEGO | 8351 BROADWAY | LEMON GROVE |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (A) (Final disease or condition resulting in death) | ► ALZHEIMER'S DISEASE | YEARS | YES [ ] NO [ ] |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST. (B) | | | 109. BIOPSY PERFORMED? YES [ ] NO [ ] |
| (C) | | | 110. AUTOPSY PERFORMED? YES [ ] NO [ ] |
| (D) | | | 111. USED IN DETERMINING CAUSE? YES [ ] NO [ ] |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| HYPERTENSION, CONGESTIVE HEART FAILURE, HYPOTHYROIDISM, ANEMIA, CHRONIC OBSTRUCTIVE PULMONARY DISEASE |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | YES [ ] NO [X] UNK [ ] |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since / Decedent Last Seen Alive | ► BILLIE GREEN M.D. | A44412 | 04/20/2017 |
| (A) mm/dd/ccyy 02/14/2017 / (B) mm/dd/ccyy 04/16/2017 | 118. TYPE/PRINT ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE  JOHN EDWARD GAIDRY M.D.  1101 FELSPAR ST, SAN DIEGO, CA 92109 | | |

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH: Natural [ ] Accident [ ] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be Determined [ ] | YES [ ] NO [ ] UNK [ ] | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 126. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ► | | |

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | *01000100G3540621* | | |



CASANDIE01

County of San Diego – Health & Human Services Agency – 3851 Rosecrans Street. This is to certify that, if bearing the OFFICIAL SEAL OF THE STATE OF CALIFORNIA, the OFFICIAL SEAL OF SAN DIEGO COUNTY AND THEIR DEPARTMENT OF HEALTH SERVICES EMBOSSED SEAL, this is a true copy of the ORIGINAL DOCUMENT FILED. This copy not valid unless prepared on engraved border displaying seal and signature of Registrar



DATE ISSUED:   4/26/2017   WILMA J. WOOTEN, M.D., M.P.H.
REGISTRAR OF VITAL RECORDS
County of San Diego

A003160133



**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**