# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZARAH KIMBLE, SEHER BASAK, and SARAH SAKINAH GROZA O'LOUGHLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADT SECURITY SERVICES, a/k/a/ ADT HOLDINGS, INC.,<br><br>Defendant. | Case No.: 3:16-cv-02519-GPC-BLM<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO WITHDRAW AS NAMED PLAINTIFFS AND SUBSTTIUTE NICK NIKKI AS NAMED PLAINTIFF**<br><br>**[DKT. NO. 63.]** |

On March 15, 2018, Plaintiffs Zarah Kimble, Seher Basak, and Sarah Sakinah Groza O'Loughlin ("Plaintiffs") filed a motion to withdraw as plaintiffs and substitute Nick Nikki as named Plaintiff and new class representative in the proposed class action ("Motion to Withdraw"). (Dkt. No. 63.) Defendant Specialized Loan Servicing, LLC ("SLS") filed a timely opposition on March 29, 2018. (Dkt. No. 70.) In response, Plaintiffs filed a reply brief on April 6, 2018. (Dkt. No. 72.)

For the following reasons, the Court **DENIES** Plaintiffs' Motion to Withdraw.

1

3:16-cv-02519-GPC-BLM

## I. BACKGROUND

On October 7, 2016, Plaintiff Margarette Smith ("Plaintiff" or "Ms. Smith") filed a purported class action complaint against SLS for violations of Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024.41, and related causes of action.[1] (Dkt. No. 1.) On May 3, 2017, the Court granted in part and denied in part SLS's motion to dismiss with leave to amend. (Dkt. No. 16.) On May 10, 2017, Plaintiff filed a purported first amended class action complaint against SLS for violations of Regulation X, 12 C.F.R. § 1024.41, and California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code 17200 *et seq.* (Dkt. No. 17, "FAC".)

Prior to the filing of the FAC, Ms. Smith died on April 18, 2017. (Id. ¶ 8.) According to her last will and testament filed with the San Diego Recorder's Office, Smith's home at 2452 Blackton Drive, San Diego, CA 92105, the subject property at issue in this case, is part of an irrevocable trust to which her three granddaughters, Zarah Kimble, Seher Basak, and Sarah Sakinah Groza O'Loughlin are equal beneficiaries. (Id.) According to the FAC, Smith's granddaughters are her successors in interest and succeeded to Smith's interest in the property. (Id.)

On May 24, 2017, SLS filed a motion to dismiss for lack of standing because Plaintiff passed away, or in the alternative, a motion to strike the class allegations pursuant to Federal Rule of Civil Procedure ("Rule") 12(f). (Dkt. No. 19.) SLS contended that "the FAC does not demonstrate that the Granddaughters are Plaintiff's successors-in-interest to the claims asserted herein." (Id. at 8[2].) On July 12, 2017, the Court deferred ruling on the motion to dismiss until the substitution issue was resolved. (Dkt. No. 24.) Plaintiffs then

---

[1] Ms. Smith, who suffered from dementia, appointed her daughter, Lynette Ethan-Groza, as power of attorney in May 2005. (Dkt. No. 32, SAC ¶ 7.) As such, Lynette Ethan-Groza managed Ms. Smith's health and legal matters, including communications with SLS regarding the current action. (Id.) In August 2016, after the death of Lynette Ethan-Groza, Plaintiff Zarah Kimble became the successor to the power of attorney. (Id.) Ms. Smith's granddaughters also became the successors in interest to Ms. Smith's trust, thereby inheriting this claim. (Dkt. No. 30.)

[2] Page numbers are based on the CM/ECF pagination.

filed a motion to substitute the granddaughters in as Plaintiffs on June 24, 2017, which this Court granted on September 13, 2017. (Dkt. Nos. 25, 30.) On September 21, 2017, the Court issued an order denying SLS's remaining motion to strike the class allegations pursuant to Rule 12(f) as premature. (Dkt. No. 31.)

Moving forward with the case, Plaintiffs filed a purported second amended class action complaint on September 21, 2017. (Dkt. No. 32, SAC.) SLS filed an answer on October 5, 2017. (Dkt. No. 37.) On October 30, 2017, the Court issued a joint discovery plan and on November 9, 2017 the Court issued a scheduling order, setting January 18, 2018 as the deadline to amend or file new pleadings. (Dkt. No. 40, 42.) On February 26, 2018, Plaintiffs filed a motion for leave to amend to add Nick Nikki as named Plaintiff. (Dkt. No. 50.) On March 6, 2018, SLS filed a response in opposition, along with affidavits, containing records suggesting that Plaintiffs misrepresented their knowledge about Ms. Smith's residence. (Dkt. Nos. 55, 56, 57.) Based on the facts contained in SLS's response, Plaintiffs filed a notice to withdraw their motion for leave to amend and filed the instant motion to withdraw as Plaintiffs and substitute Nick Nikki on March 15, 2018. (Dkt. Nos. 62, 63.) SLS filed a response in opposition on March 29, 2018, arguing that Plaintiffs' Motion to Withdraw fails to meet three different standards: (1) voluntary dismissal under Rule 41; (2) modification of a scheduling order under Rule 16; and (3) amendment under Rule 15.[3] (Dkt. No. 70 at 7 n. 6.)

The Court disagrees with SLS's contention that Plaintiffs' Motion to Withdraw should be characterized as a request for voluntary dismissal pursuant to Rule 41. (Dkt. No. 70 at 11-13.) Under Rule 41, after an opposing party has served an answer or motion for summary judgment, "an action may be dismissed *at the plaintiff's request* only by court order, on terms that the court considers proper." Fed. R. Civ. P. Rule 41(a)(2) (emphasis

---

[3] Both parties summarily reference Rule 21 concerning the misjoinder and nonjoinder of parties, Fed. R. Civ. P. 21, but fail to sufficiently address the application of the Rule to this case. As such, the Court declines to address an issue not fully briefed.

added). Plaintiffs here do not seek dismissal of their claims. (Dkt. No. 72 at 11-12.) Rather, their request concerns substituting the named plaintiffs in the case. (Id.) SLS has provided this Court with no case law that demands it re-characterize Plaintiffs' claim regarding the named parties as a dismissal of the case in its entirety. Conversely, district courts have routinely considered motions to withdraw and substitute under Rules 15 and 16. See, e.g., Aguilar v. Boulder Brands, No. 3:12–cv–01862–BTM–BGS, 2014 WL 4352169, at *6-11 (S.D. Cal. Sept. 2, 2014) (analyzing plaintiffs' motion to substitute named plaintiff made after the deadline imposed by the court's scheduling order under Rule 16); Clark v. Citizens of Humanity LLC, 14cv1404-JLS(WVG), 2016 WL 4597527, at *2-4 (S.D. Cal. May 3, 2016); Hitt v. Arizona Beverage Co., LLC, No. 08CV809WQH-POR, 2009 WL 4261192, at *4 (S.D. Cal. Nov. 24, 2009) (same).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 15(a) provides that leave to amend shall be freely given when justice so requires and the standard is applied liberally. Fed. R. Civ. P. 15(a). However, once a district court has established a deadline for amended pleadings, and that deadline has passed, Rule 16 applies. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992). Because Plaintiffs filed the instant Motion to Withdraw on March 15, 2018, almost two months after the January 18, 2018 deadline to amend the pleadings had passed, Rule 16 initially governs Plaintiffs' current Motion to Withdraw.

Rule 16 provides that a pretrial scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "Good cause" focuses on the diligence of the party seeking an amendment. Johnson, 975 F.2d at 609. The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. See Zivkovic v. S. Cal. Edison Corp., 302 F.3d 1080, 1087-88 (9th Cir. 2002).

Prejudice to the non-moving party, though not required under FRCP 16(b), can supply additional reasons to deny a motion. Coleman, 232 F.3d at 1295. The Ninth Circuit noted that "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Id.; see Sugita v. Parker, 13cv118-AWI-MJS(PC), 2015 WL 5522078, at *2 (E.D. Cal. Sept. 16, 2015) (counsel's carelessness or inadvertence fails to establish "good cause"). Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 952 (9th Cir. 2006).

### III. RULE 16

With respect to the diligence inquiry demanded by Rule 16, SLS contends that Plaintiffs were "on notice of the potential issues with their standing" since the filing of their first motion to dismiss on February 16, 2017.[4] (Dkt. No. 55 at 11.) Moreover, they were on notice that SLS's records reflected that Ms. Smith derived rental income from the property.[5] (Dkt. No. 15 at 2 n. 2.) In response, Plaintiffs argue that they first became aware of facts that supported substitution on March 6, 2018, when SLS attached documents prepared by their mother that Plaintiffs felt "ill-equipped to address." (Dkt. No. 72 at 9.) Specifically, these documents reveal that their mother had the assistance of other "mortgage contributors" well before the relevant time period in this case. (Id.) Upon discovery of these facts, Plaintiffs withdrew their pending motion for leave to file an amended complaint and filed the instant Motion to Withdraw on March 15, 2018. (Dkt. No. 50, 62, 63.) Plaintiffs conclude that because they "acted swiftly" to file the current motion, they satisfied the good cause standard under Rule 16. (Dkt. No. 63 at 14.)

---

[4] Regulation X applies to a "mortgage loan that is secured by a property that is a borrower's principal residence." 12 C.F.R. § 1024.30(c).
[5] The requirements of Regulation X are exempt from loans made "primarily for business, commercial or agricultural purposes." 12 C.F.R. § 1024.5(b).

5

In determining good cause, a court primarily focuses on the diligence of the party seeking to amend. See Johnson, 975 F.2d at 609. "If [the moving] party was not diligent, the inquiry should end." Id. It is not enough, however, to simply file the substitution motion in a timely manner; rather, a party must demonstrate diligence such that amendment was not possible prior to the filing deadline. The Ninth Circuit in Johnson, for example, considered whether the moving party was put on notice of the proposed modification at any point in the proceeding to determine diligence. Id. (holding that plaintiff was not diligent when defendant's July 7, 1989 response to an interrogatory clarified that defendant did not own the ski resort in question, yet plaintiff waited until February 15, 1990 to file a motion to amend). The court held that "[f]ailing to heed clear and repeated signals that not all the necessary parties had been named in the complaint does not constitute diligence." Id.

The Tenth Circuit has similarly viewed notice as "significant" in the diligence inquiry demanded under Rule 16. Harris v. Illinois-California Exp., Inc., 687 F.2d 1361, 1373 (10th Cir. 1982). In holding that a district court did not abuse its discretion in denying a motion to join plaintiffs' and co-defendants' insurance companies in a case involving an automobile accident, the court concluded that "[w]hen, as here, the defendant had full knowledge for at least eight months prior to trial [of the facts warranting joinder] . . . any prejudice from non-joinder . . . was the result of untimely filing of the motion." Id. at 1373-74.

Likewise, Plaintiffs in the instant case had full knowledge that Ms. Smith's standing and their personal knowledge were contentious issues in this case at the outset of the lawsuit. SLS first substantively questioned Ms. Smith's standing on May 24, 2017, alerting Plaintiffs that Ms. Smith's principal place of residence would be central to the litigation. (Dkt. No. 19-1 at 11.) Specifically, SLS notes that "[t]he Granddaughters will be forced to litigate the issue of whether the Property qualified as Plaintiff's principal residence at all times relevant to this proceeding." (Id.) SLS further questioned the granddaughters'

personal knowledge as to Ms. Smith's claim because Plaintiffs' mother was responsible for handling Ms. Smith's legal matters, calling into question Plaintiffs' adequacy as class representatives. (Id. at 11-12.) SLS clearly stated that "the face of the FAC demonstrates that the Granddaughters lack personal knowledge of the facts underlying this action." (Id. at 11.) Thus, Plaintiffs were first put on notice about the potential barriers to standing and adequacy on May 24, 2017, nine months before filing for leave to amend on February 26, 2018.[6] (Dkt. No. 50.) SLS continued to challenge both Ms. Smith's residency and the granddaughters' knowledge throughout the proceeding.

After the Court granted Plaintiffs' request for substitution on September 13, 2017, SLS expressed that it continued to oppose Ms. Smith's standing by asserting a fifth affirmative defense of lack of standing. (Dkt. No. 37 at 26.) On November 28, 2017, Plaintiffs were served interrogatories asking where Ms. Smith lived and for how long. (Dkt. No. 70-3, Ex. A.)

By this point in the proceeding, SLS had made the importance of Ms. Smith's residency astoundingly clear. Instead of performing their due diligence, however, Plaintiffs served sworn responses on January 11, 2018 stating that Ms. Smith lived at the property in question until July 2016 and then moved to a nursing home. (Dkt. No. 70-3, Exhibit B.) This is in direct contradiction to the information provided in the FAC, filed May 10, 2017, and the SAC, filed on September 21, 2017, which both indicated that Ms. Smith lived in the property until "around the fall of 2015, at which point she moved into a nursing care facility." (Dkt. No. 17, FAC ¶ 76; Dkt. No. 32, SAC ¶ 76.) Relying on this information, SLS served the nursing home with a document subpoena and received over 8,000 pages of records, revealing that Ms. Smith was admitted to the facility in March of

---

[6] The Court notes that the last allegation of communication between Ms. Smith and Defendant was in August 2016 when Lynette Ethan-Groza passed away. (Dkt. No. 32, SAC ¶ 168.) There is no indication that Zarah Kimble, as the successor power of attorney, had any interaction with Defendant concerning the loan modification.

7

2012, four years earlier than Plaintiffs asserted in their sworn responses. (Dkt. No. 55 at 9.)

Although Plaintiffs corrected this error in their proposed third amended complaint, they maintained in both the FAC and SAC that "[b]oth before and after [Ms. Smith] moved out, one or more of her granddaughters, the Plaintiffs in this action, lived in the home. (Dkt. No. 17, FAC ¶ 76; Dkt. No. 32, SAC ¶ 76.) SLS rightfully questions this assertions, because "[h]ad any one of the Plaintiffs resided at the Property during the relevant time period, they would have necessarily known that Smith did not also reside at the Property." (Dkt. No. 55 at 12.) Plaintiffs fail to specifically address this inconsistency and their only response is that they lacked the requisite knowledge of documents prepared by their late mother and that upon becoming aware of such documents for the first time, "Plaintiffs realized that there might be additional documents, facts, and information that their mother had coordinated that would surprise them, that they might now be aware of, or that they were otherwise unprepared to explain. . . ." (Dkt. No. 63 at 14.) If one or more of the Plaintiffs lived at the property at all times leading up to Ms. Smith's relocation to the nursing home, as they alleged in their SAC, they should have been fully equipped to accurately answer SLS's question regarding when Ms. Smith moved to a nursing home. Plaintiffs' failure to do so demonstrates a carelessness that is not compatible with a finding of diligence.[7] Johnson, 975 F.2d at 609.

Moreover, while Plaintiffs claim the documents they received from SLS on March 6, 2018 prompted them to realize their lack of knowledge about legal documents prepared by their mother, specifically the fact there were other "mortgage contributors", (Dkt. No. 56-1, Ex. I at 40[8]), they were on notice that SLS's records reflected that Ms. Smith derived

---

[7] The Court even relied on the representation in the Complaint that Ms. Smith lived at the property until October 2015 concluding that the property may have been Smith's principal residence when she initially submitted her application. (Dkt. No. 16 at 9-10.)

[8] Exhibit I is a letter by Sameer Shrooki dated February 10, 2011 stating that he has been paying rent in the amount of $1200 to assist with the expenses and cost of living at the property.

8

rental income from the property in April 2017, (Dkt. No. 15 at 2 n. 2), and were not diligent in pursuing discovery on that issue. Moreover, the Court notes that according to the operative SAC, Plaintiffs assert that the property at issue was always considered the family home used for personal purposes and had never been rented out. (Dkt. No. 32, SAC ¶ 75.) Before and after Ms. Smith moved out, one or more of the Plaintiffs lived at the property. (Id. ¶ 76.) The SAC also claims that Plaintiff Seher Basak has continuously lived at the property since childhood. (Id. ¶ 78.) Therefore, Plaintiffs must have known that there were other "mortgage contributors" at that time, and the content of the documents Defendant filed on March 6, 2018 could not have been new information to Plaintiffs. Similarly, Plaintiffs have not demonstrated diligence concerning the issue of whether the property was subject to rental income.

Accordingly, Plaintiffs have failed to demonstrate diligence to justify a modification of the scheduling order after its deadline. Since Rule 16 is not satisfied, the Court need not analyze Rule 15's more liberal standard for amendment. Id. at 607-09 (when "good cause" is not demonstrated under Rule 16, "the inquiry should end").

**IV.   SANCTIONS**

Defendants seek sanctions in the form of attorney's fees under the Court's inherent authority and 28 U.S.C. § 1927 for the misrepresentations concerning Ms. Smith's residency at the property made by Plaintiffs asserting the misrepresentations were made in bad faith and were reckless. Plaintiffs oppose arguing they did not intentionally mislead the Court or hide relevant facts and did not act in bad faith or recklessly. They argue that the home was Ms. Smith's principal residence because they believed she would eventually return to the family home and considered it to be her true home.

A court has the inherent power to assess attorneys' fees for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980) (citations omitted). Bad faith applies not only to actions that led to filing the complaint but

9

also to conduct during the litigation. Id. The court may assess attorneys' fees against the responsible party when the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." Chambers v. Nasco, 501 U.S. 32, 46 (1991). Due to its potency "inherent powers must be exercised with restraint and discretion." Id. at 44.

A specific finding of bad faith or conduct tantamount to bad faith is required for inherent power sanctions. Fink v. Gomez, 239 F.3d 989, 993, 994 (9th Cir. 2001); see also Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir. 1993) (quoting United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir. 1986)). Bad faith conduct includes willful actions such as "recklessness combined with an additional factor, such as frivolousness, harassment, or an improper purpose." Fink, 239 F.3d at 994. "[S]anctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" Primus Auto. Fin. Servs, Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) (citation omitted).

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. District courts have discretionary authority "to hold attorneys personally liable for excessive costs for unreasonably multiplying proceedings." Gadda v. Ashcroft, 377 F.3d 934, 943 n. 4 (9th Cir. 2004). An attorney who "multiplies the proceedings" may be required to pay the excess fees and costs caused by such conduct. Braunstein v. Arizona Dep't of Transp., 683 F.3d 1177, 1189 (9th Cir. 2012). There must be a showing of the attorney's recklessness or bad faith. Estate of Blas ex rel. Chargualaf v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an

opponent." Id. "Bad faith may be inferred from a totally baseless course of conduct." Id. Ignorance or negligence or incompetence does not support a finding of recklessness or bad faith. Banas v. Volcano Corp., 47 F. Supp. 3d 941, 951 (N.D. Cal. 2014) (citing Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 775 (S.D.N.Y. 2011)).

The Ninth Circuit has held that there is nothing in the Federal Rules of Civil Procedure preventing a party from filing "successive pleadings that make inconsistent or even contradictory allegations." PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007) (reversing court's order striking allegations in amended complaint that were inconsistent from original complaint). However, if a party has brought the inconsistent or contradictory allegations in bad faith, a party may seek relief through § 1927 or the court's inherent authority. Id.

Here, while there may be been misrepresentations or inconsistencies concerning when Ms. Smith lived at the property, Plaintiffs plausibly argued that the home was Ms. Smith's principal residence despite her stay at the nursing care facility because she had intended to return to the property. (See Dkt. No. 14 at 17-19.) The Court concludes that Defendants have not demonstrated that the representations were made in bad faith or recklessly to justify attorney's fees. Accordingly, the Court DENIES Defendants' motion for sanctions.

## V.     CONCLUSION

Despite ample notice of the standing issues and adequacy of Plaintiffs as class representatives dating back to May of 2017, and despite the presentation of arguments suggesting the need for modification well before the January 18, 2018 deadline, Plaintiffs were dilatory in filing the current Motion to Withdraw. Accordingly, the Court **DENIES**

////

////

////

////

11

Plaintiffs' Motion to Withdraw and Substitute Plaintiffs. The hearing date set for April 27, 2018 shall be vacated.

**IT IS SO ORDERED.**

Dated: April 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge